UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL FRENCHE                          :
                                         :
          v.                             :          C.A. No. 14-263ML
                                         :
CAROLYN W. COLVIN                        :
Commissioner of the Social Security      :
Administration                           :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

     This matter is before the Court for judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Social Security Disability Insurance

("SSDI") and Supplemental Security Income benefits ("SSI") under the Social Security Act (the

"Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on June 11, 2014 seeking to reverse the

decision of the Commissioner.  On April 13, 2015, Plaintiff filed a Motion to Reverse the Decision of

the Commissioner.  (Document No. 16).  On June 11, 2015, the Commissioner filed a Motion for an

Order Affirming the Commissioner's Decision.  (Document No. 18).  Plaintiff filed a Reply on June

26, 2015.  (Document No. 19).

     This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent research, I find that there is substantial evidence in this record to support

the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.

Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

Commissioner's Decision (Document No. 18) be GRANTED and that Plaintiff's Motion to Reverse

the Decision of the Commissioner (Document No. 16) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSDI and SSI on June 24, 2010 alleging disability since July 1,

2009.  (Tr. 97-104).  The application was denied initially on February 4, 2011 (Tr. 76-79) and on

reconsideration on July 26, 2011.  (Tr. 81-83).  Plaintiff requested an Administrative hearing.  On July

18, 2012, a hearing was held before Administrative Law Judge Donald P. Cole (the "ALJ") at which

time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified.  (Tr. 311-

343).  The ALJ issued an unfavorable decision to Plaintiff on July 26, 2012.  (Tr. 11-25).  The Appeals

Council denied Plaintiff's Request for Review on April 11, 2014, therefore the ALJ's decision became

final.  (Tr. 4-8).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in not affording controlling weight to the opinion of Dr.

Thomas Guttmacher, his primary care physician.

The Commissioner disputes Plaintiff's claims and asserts that substantial evidence supports

the ALJ's decision to give minimal probative weight to Dr. Guttmacher's assessments.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42

U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and

Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains

jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1ˢᵗ Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

## D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing

other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through

exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

**2.    Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11ᵗʰ Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11ᵗʰ Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-one years old on the date of the ALJ's decision. Plaintiff completed the Ninth Grade and worked in the past as a cook and food service manager. (Tr. 145, 155). Plaintiff last worked in June 2009. (Tr. 319). Plaintiff initially alleged disability due to tendonitis, carpel tunnel, tennis elbow, asthma and vertigo. (Tr. 154). Plaintiff was later diagnosed with fibromyalgia. (Tr. 168-169).

Plaintiff visited his primary care physician, Dr. Thomas Guttmacher, on twelve occasions between September 1, 2009 and the date of the ALJ's decision. (Tr. 187-191, 200-204, 259, 266-268, 272, 275-279, 292, 307). Dr. Guttmacher noted in only three of those twelve visits that fibromyalgia or arthralgia were one of the chief complaints of Plaintiff. (Tr. 187, 259, 277).

On June 25, 2010, Plaintiff saw Dr. Guttmacher to discuss disability and arthralgia. (Tr. 187-189). Plaintiff reported an aching and dull pain in his wrists that radiated in his right arm. (Tr. 187). He also reported pain when extending his elbows to grab something. Id. Dr. Guttmacher's musculoskeletal examination revealed tenderness in the left and right elbow. (Tr. 188). Dr. Guttmacher diagnosed Plaintiff with lateral epicondylitis and he gave Plaintiff an injection in his right elbow. (Tr. 189).

On July 20, 2010, Plaintiff underwent a rheumatological evaluation with Dr. Kimi Chan, to whom he was referred by Dr. Guttmacher. (Tr. 168). Plaintiff complained of a four-year history of a sensation of skin tightening, especially in his hands and elbows. Id. He also reported diffuse arthralgia and non-restorative sleep. Id. He had previously been diagnosed with tendonitis in some joints. Id. Plaintiff's musculoskeletal examination was entirely within normal limits, but he had multiple paired symmetric tender points consistent with fibromyalgia. (Tr. 169). Dr. Chan opined that Plaintiff had fibromyalgia given his tender points, non-restorative sleep, and history of depression. Id. Dr. Chan explained the importance of exercise and good sleep for treating fibromyalgia. Id. Plaintiff declined a sleep aid that Dr. Chan offered since he wanted to be able to wake up if his son needed him during the night. Id. Dr. Chan gave Plaintiff a sample of Cymbalta. Id.

Plaintiff met with Dr. Guttmacher on August 6, 2010 for arthralgia and an upper respiratory infection. (Tr. 259). He reported night-time waking and weakness and tingling in his fingertips. Id. He felt the pain was getting worse, and he said that it hurt to hold a coffee cup or the steering wheel. Id. Plaintiff rated his pain at a 6 on a scale of 1 to 10. (Tr. 260). Musculoskeletal examination revealed tenderness in his bilateral hips, elbow, and shoulder and in the thoracic and lumbar spine. Id. Dr. Guttmacher noted that fibromyalgia was a possibility, but he wanted to review the lab results of the diagnostic tests ordered by Dr. Chan. Id.

On August 30, 2010, Plaintiff was examined by Dr. Sook Suh Lee. (Ex. 4F). Dr. Lee's physical examination was fairly unremarkable but he did note the presence of joint tenderness and limited range of motion. (Tr. 176). Based on Plaintiff's complaints of pain and his examination, Dr. Lee assessed "multiple musculoskeletal pain including both wrists, both arms, both shoulders, low back, and both lower extremities." (Tr. 177).

On September 28, 2010 and again on October 12, 2010, Plaintiff sought treatment from Dr. Guttmacher for upper respiratory infections. (Tr. 200, 266). He returned to Dr. Guttmacher again with an upper respiratory infection on October 23, 2010. (Tr. 268). Plaintiff saw Dr. Guttmacher on December 7, 2010 for cold symptoms. (Tr. 202). He returned to Dr. Guttmacher on December 28, 2010 with reports of ear discomfort. (Tr. 204). On February 11, 2011, Plaintiff visited Dr. Guttmacher for an upper respiratory infection. (Tr. 272). On February 15, 2011, Plaintiff visited Dr. Guttmacher for an upper respiratory infection and to obtain paperwork for a request for general public assistance. (Tr. 275). On March 15, 2011, Plaintiff met with Dr. Guttmacher for complaints of fibromyalgia and asthma. (Tr. 277). Dr. Guttmacher noted that Plaintiff's fibromyalgia was located in his bilateral hands. Id. Musculoskeletal examination elicited tenderness in the lumbar spine but not in his cervical spine, and tenderness in Plaintiff's bilateral knee, hip, rib, elbow and shoulder. (Tr. 278). Dr. Guttmacher assessed Plaintiff with fibromyalgia, and he reviewed disability forms. Id.

The same day, Dr. Guttmacher completed worksheet opinions regarding Plaintiff's condition. (Tr. 279, 301-303). Dr. Guttmacher identified Plaintiff's diagnoses as fibromyalgia, COPD and depression/anxiety. (Tr. 279). Dr. Guttmacher noted that Plaintiff continued to complain of numbness, tingling and pain in various areas of his body, mostly in his hands. Id. Plaintiff also complained of COPD as a result of his asthma. Id. His depression/anxiety was controlled with medications. Id. Dr. Guttmacher further opined that Plaintiff's pain was rated as a 6 to 9 on a scale of 1 to 10, and that he could sit for four hours in an eight-hour day, but could only stand/walk for less than two hours a day. (Tr. 301). Dr. Guttmacher opined that Plaintiff could never lift any weight, and he would miss more than three days of work per month on average. (Tr. 301, 303).

On May 6, 2011, Dr. Thomas Bennett reviewed the medical records including Plaintiff's fibromyalgia diagnosis and concluded that he was capable of performing a range of light, unskilled work. (Tr. 32-39). Similar findings were made by Dr. Roy Brown on October 18, 2010. (Tr. 42-46).

On September 2, 2011, Plaintiff went to Dr. Guttmacher complaining of nasal congestion, sinus pain and sinus pressure. (Tr. 292). On September 30, 2011, Dr. Guttmacher completed another worksheet opinion assessing Plaintiff's physical capacity evaluation. (Tr. 285-286). Dr. Guttmacher opined that Plaintiff could sit for three hours, and was unable to stand or walk at all. (Tr. 285). Dr. Guttmacher opined that Plaintiff would miss more than four days of work per month because of his fibromyalgia. (Tr. 284).

Plaintiff met with Dr. Guttmacher on May 23, 2012, complaining of shortness of breath and chest tightness that was aggravated by moderate activity, like climbing stairs. (Tr. 307). Plaintiff reported that he continued to smoke cigarettes. Id.

On July 5, 2012, Dr. Guttmacher completed an additional physical capacities evaluation worksheet on behalf of Plaintiff. (Tr. 305-306). He opined that Plaintiff could sit, stand and walk for one hour in an eight-hour workday. (Tr. 305). Plaintiff could occasionally lift and carry up to five pounds, but no more. Id. Dr. Guttmacher again opined that Plaintiff would miss more than four days of work per month. (Tr. 306).

### A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ found that Plaintiff's fibromyalgia, asthma, vertigo, depression, anxiety and panic disorder were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 16-17). At Step 3, the ALJ determined that these impairments did not singly, or in combination, meet or medically

equal any of the Listings. (Tr. 19-20). As to RFC, the ALJ found that Plaintiff was able to perform

"less than the full range of light work" with certain postural, environmental and nonexertional

limitations. (Tr. 20). Based on this RFC and the VE's opinions, the ALJ determined that Plaintiff

could not perform his past relevant work in the food service industry but could make a successful

adjustment to other unskilled, light and sedentary jobs. (Tr. 24-25). Thus, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act from July 1, 2009 through the

decision date. (Tr. 25).

### B.     The ALJ Properly Evaluated the Treating Physician Opinion

Plaintiff's sole argument is that the ALJ did not give sufficient weight to the opinions of his

treating physician – Dr. Guttmacher. Dr. Guttmacher opined that Plaintiff's fibromyalgia caused

moderately severe pain and that such pain would preclude the sustained concentration and productivity

needed to sustain ongoing, full-time employment. (Tr. 284, 306). After reviewing all of the evidence

of record, the ALJ found that the severe functional restrictions assessed by Dr. Guttmacher were

entitled to "minimal probative weight." (Tr. 22). In particular, the ALJ noted that Dr. Guttmacher's

assessments were "not supported by the longitudinal evidence of record and appear to be based upon

[Plaintiff's] subjective complaints." Id.

Because a treating physician is typically able to provide a detailed longitudinal picture of a

patient's impairments, an opinion from a treating source is generally entitled to considerable weight

if it is well supported by clinical findings and not inconsistent with other substantial evidence of

record. 20 C.F.R. § 404.1527(d); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass

2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with

other substantial evidence in the record, even if that evidence consists of reports from non-treating

doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship and the frequency of the examinations. 20 C.F.R. § 404.1527(d)(1). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). Further, under 20 C.F.R. § 404.1527(e), the ultimate issue of disability, i.e., inability to work, is one reserved to the Commissioner, and no special significance is given to the source of an opinion on such issues. 20 C.F.R. § 404.1527(e)(3). These are simply "not medical opinions." 20 C.F.R. § 404.1527(e). Thus, the ultimate opinions of this treating physician that Plaintiff is unable to work is not a medical opinion covered by the scope of 20 C.F.R. § 404.1527(d)(2)'s "good reasons" requirement. See Gadoury v. Astrue, C.A. No. 08-140S, 2009 WL 2762504 at *2 (D.R.I. Aug. 27, 2009).

The ALJ properly afforded little weight to the opinion of Dr. Guttmacher that Plaintiff was completely disabled based on pain due to fibromyalgia, because the record clearly supports the finding that Plaintiff possessed the RFC to perform a reduced range of light work. The ALJ gave good reasons for his decision, including the fact that the severe limitations in functioning assessed by Dr. Guttmacher are "not supported by the longitudinal evidence of record." (Tr. 22). Although Dr. Guttmacher reported disabling levels of pain in his 2011 and 2012 assessments, these opinions are not supported by his treatment records. A close review of the records reveals that Dr. Guttmacher primarily treated Plaintiff for respiratory issues. While Plaintiff did report hand and wrist pain, the documented levels of functional limitations simply do not support Dr. Guttmacher's opinions. The records consistently document reported pain at a level of 6 out of 10 and treatment with as needed ibuprofen. See Exhs. 8F, 9F and 12F. The records do not reflect any referral to

physical therapy or a pain management specialist, or any prescriptions for narcotic pain medication.

Id.

Based on his review of the records, the reviewing physician, Dr. Bennett, opined that Plaintiff could frequently lift and carry at least ten pounds, and occasionally lift and carry at least twenty-five pounds, and could sit, stand and walk for a total of six hours a day. (Tr. 32-39). See Berrios Lopez v. Sec'y HHS, 951 F.2d 427, 431-432 (1st Cir. 1991) (concluding substantial evidence supported ALJ's RFC evaluation based on reports of non-examining physicians). The ALJ properly found that the medical evidence of record supports Dr. Bennett's opinions concerning Plaintiff's physical abilities and gave them "significant probative weight." (Tr. 22). Thus, even if the ALJ made any mistake in his evaluation of Plaintiff's fibromyalgia, Dr. Bennett properly evaluated the condition and thus the ALJ's reliance on his expert opinion is reasonable and would render any error on the ALJ's part to be harmless. See Berrios Lopez, 951 F.2d at 431-432 (concluding substantial evidence supported ALJ's RFC evaluation based on reports of non-examining physicians).

Plaintiff relies primarily upon the Second Circuit's decision in Green-Younger v. Barnhart, 335 F.3d 99 (2nd Cir. 2003), and argues that "[t]his ALJ made the same error here." (Document No. 16 at p. 13). He did not. In Green-Younger, the Court held that the ALJ erred in failing to accord controlling weight to a treating physician's opinion that the claimant suffered from fibromyalgia and could not work because of severe pain. The ALJ in that case relied upon a lack of "objective medical findings" in rejecting the treating physician's opinion, and give more weight to a work-capacity evaluation prepared by a physical therapist. 335 F.3d at 105. The Court determined that the ALJ "did not actually credit [the treating physician's] diagnosis of fibromyalgia or misunderstood its nature" and "effectively required 'objective' evidence for a disease that eludes such measurement." Id. at 108.

Green v. Younger is distinguishable. Here, the ALJ did credit Plaintiff's fibromyalgia diagnosis and found it to be a "severe" impairment at Step 2. He also found that Plaintiff's medically determinable impairments including fibromyalgia "could reasonably be expected to cause the alleged symptoms." (Tr. 21). However, the ALJ did not find Plaintiff's allegations as to the functional effects of those symptoms to be completely credible. Id. The ALJ did not impermissibly base his decision on a lack of objective medical findings. See Johnson v. Astrue, 597 F.3d 409 (1st Cir. 2009) (per curiam) (once an ALJ accepts a fibromyalgia diagnosis, he has "no chance but to conclude that the claimant suffer[s] from the symptoms usually associated..., unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom"). (emphasis added). Id. at 414.

The ALJ based his RFC finding and nondisability decision on several elements that are all supported by the record. First, the ALJ relied upon the opinion of Dr. Bennett, a state agency reviewing physician. (Exh. 1A). Dr. Bennett reviewed the medical records and accepted Plaintiff's fibromyalgia diagnosis, and noted the presence of joint pain/discomfort and stiffness but found that Plaintiff was otherwise able to care for his son and perform activities such as driving, shopping, getting out and managing personal care. (Tr. 32-35). The ALJ based his RFC assessment on Dr. Bennett's medical opinions. (Tr. 20-22). Second, the ALJ found that Plaintiff's alleged functional limitations were inconsistent with his daily activities which were described as "consistent with an individual who lives independently and adequately maintains a household." (Tr. 21-22). Finally, the ALJ accurately observed that Plaintiff had not been referred to physical therapy, pain management or prescribed pain medication. (Tr. 22).

"The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1ˢᵗ Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1ˢᵗ Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's non-disability finding. Although this is a close call, Plaintiff has shown no error in the ALJ's evaluation of the medical evidence.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Commissioner's Decision (Document No. 18) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 16) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1ˢᵗ Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1ˢᵗ Cir. 1980).


 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 29, 2015